**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| MICHELLE LEE TANNLUND, on behalf of herself and all others similarly situated, | ) ) |
| | ) Case No. 1:14-cv-5149 |
| Plaintiff, | ) |
| | ) Hon. Judge James B. Zagel |
| v. | ) |
| | ) |
| REAL TIME RESOLUTIONS, INC., | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OF LAW IN SUPPORT OF**
**REAL TIME RESOLUTION, INC.'S**
**MOTION FOR JUDGMENT ON THE PLEADINGS**

**I.     INTRODUCTION**

Plaintiff Michelle Lee Tannlund's complaint alleges that Real Time Resolutions, Inc. ("Real Time") has violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), by placing automatically-dialed telephone calls to her cellular phone. Plaintiff's Complaint must be dismissed because any calls Real Time placed to Tannlund were in connection with its efforts to collect on her mortgage loan. Specifically, Tannlund provided "prior express consent" for Real Time to contact her at a cellular number 510-xxx-4777 ("the 4777-number"), a telephone number Real Time dialed when contacting her. The TCPA unequivocally permits automatically-dialed telephone calls to cellular phones when a person provides prior express consent for such calls.

In this case, Tannlund's loan modification agreement expressly authorized Real Time to contact her at the 4777-number:

> By signing this document, I hereby authorize Real Time (a) to send me
> monthly billing statements regardless of my current or prior bankruptcy

status and (b) retain and use the information provided below as well as all
my future e-mail addresses and cell phone numbers to contact me.

Tannlund's Complaint explicitly refers to and therefore incorporates that loan modification agreement into her pleading. (*See* Compl., ¶¶ 10 & 13.) Although that agreement is not attached to the Complaint, it may nonetheless, further to Seventh Circuit precedent, be considered in deciding this motion for judgment on the pleadings, without the need for further discovery, and without the need to convert this motion into one for summary judgment.[1]

## II.     FACTUAL BACKGROUND

Except for facts drawn from Plaintiff's incorporated loan modification agreement, the essential facts of this case are taken from the Complaint; the "complaint's well-pleaded factual allegations, though not its legal conclusions," are entitled to an assumption of truth for purposes of this motion only. *See, e.g, Phillips v. Prudential Ins. of Am.*, 714 F.3d 1017, 1019 (7th Cir. 2013); *see also Hanley v. Green Tree Servicing, LLC*, 934 F. Supp. 2d 977, 983 (N.D. Ill. 2013) ("the reviewing court is to assume that the factual allegations made in the complaint (unless fantastic, or contradicted in the complaint itself or in documents attached to it) are true.")

Real Time is a debt collector, whose business includes the collection of consumer loans that are, or are believed to be, in default. Real Time operates from its offices in Dallas, Texas. (Compl., ¶¶ 5, 7 & 8; *see also* Answer and Affirmative Defenses, D.I. #11 ("Answer"), ¶¶ 5, 7 & 8.) It is further alleged that, in 2005, Tannlund borrowed money from Countrywide Financial to assist in her purchase of a home in California. (Compl., ¶ 9.) When the interest rate on her loan increased in 2009, she fell into default. (*Id.*) Sometime after origination, Bank of America contracted with Real Time to collect on Tannlund's loan. (*See id.*, ¶¶ 9-10; Answer, ¶¶ 9-10.)

---

[1]      Real Time is contemporaneously filing an Answer and an alternative motion to transfer venue.

Tannlund entered into a loan modification agreement with Real Time (the "Modification Agreement") on May 23, 2012. (Compl., ¶¶ 10, 13; Answer, ¶¶ 10, 13 & Exhibit A thereto.) Tannlund's Modification Agreement is attached as Exhibit B to the affidavit of Real Time employee Patrick Coon, dated August 1, 2014, establishing the authenticity of the agreement. Tannlund personally wrote the 4777-number into the agreement. (*See* Ex. 1 hereto at sub-exhibit B, at 4.)

The last paragraph of the Modification Agreement states:

> By signing this document, I hereby authorize Real Time (a) to send me monthly billing statements regardless of my current or prior bankruptcy status and (b) retain and use the information provided below as well as all my future e-mail addresses and cell phone numbers to contact me.

(*Id.*)

The Modification Agreement further provides:

> **Section D.  Acceptance of Offer:**
> The borrower, for new, fresh and valuable consideration which is hereby acknowledged, hereby agrees to the terms expressed in this Agreement, and further, hereby forever releases, discharges and relinquishes the original and any subsequent lender, creditor, servicer, and any current or prior owner of your home loan note, or lien.  Real Time and any entities affiliated or related thereto, and its or their respective employees, agents, attorneys, consultants, advisors, successors and assigns from any and all liabilities, claims, causes of action, losses, damages or other matters whatsoever, known or unknown, which have been asserted or which could in the future be asserted that relate to claims, causes of action, losses, damages, professional or attorney's fees or other matters arising out of or relating in any way to this Agreement, the lien described herein which the borrower also hereby acknowledges as being fully outstanding and fully enforceable, activities relating to the former or current servicing of your loan or lien, the collection or negotiations with the borrower by Real Time or any other servicer of your home loan or note, any loan, note, or lien related documents, their origination process and any charges, interest, principal, or fee payments or requirements relating thereto, and any and all transactions, disclosures, modifications or recordings contemplated thereunder, whether performed or not performed, or the property, including but not limited to the improvements constructed thereon to your bankruptcy or your actual or potential discharge.

(*Id.*)

Real Time's records show that Plaintiff's modified loan became delinquent again in 2013, though Plaintiff disputes this. (Compl., ¶¶ 14-15; Answer ¶ 14.) As a result, Real Time initiated calls to the 4777-number[2] between January 1, 2013, and June 30, 2014, to discuss the status of her modified loan. (Compl., ¶¶ 14-15 & 17-18; Answer, ¶ 14.)[3] The Complaint asserts that a 2013 post-modification missed payment "trigger[ed] Real Time's automatic dialer." (Compl., ¶ 14.)[4]

## III.  AUTHORITY FOR THIS MOTION

This motion, brought pursuant to Federal Rule of Civil Procedure Rule 12(c), is the functional equivalent of a motion to dismiss under Rule 12(b)(6). *See, e.g., Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687 n.1 (7th Cir. 2012); *Republic Steel Corp. v. Penn. Eng'g Corp.*, 785 F.2d 174, 182 (7th Cir. 1986) (motion under Rule 12(c) is decided under same standard as motion under Rule 12(b)(6)).  A complaint may be dismissed for failure to state a claim upon which relief can be granted for one of two reasons: (1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal theory. *See, e.g., Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Hynek v. MCI World Commc'ns, Inc.*, 202 F. Supp. 2d 831, 832 (N.D. Ind. 2002).  A complaint should be dismissed if the complaint does not proffer enough

---

[2]  Plaintiff's complaint does not identify a number for the cellular phone on which she was allegedly contacted.

[3]  A paragraph of the Complaint mentions calls to Plaintiff prior to the modification but these particular calls are not alleged to have been made to Plaintiff's cell phone. (Compl., ¶ 10.) Another paragraph in the Complaint mentions collection calls to Plaintiff's cell phone but does not link these calls to any alleged TCPA violations as there are no linked automatic telephone dialing system ("ATDS") allegations regarding these calls. (*See id.*, ¶ 11.)

[4]  Real Time merely recites the ATDS allegation for purposes of this motion testing the viability of the pleading and does not admit that such allegations are accurate or even that Real Time used an ATDS in 2013.

facts to state a claim for relief that is plausible on its face. *Twombly*, 550 U.S. at 558-59. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but has not 'show[n]'—'that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) quoting Fed. R. Civ. P. 8(a)(2). To the extent that this motion raises what might be considered affirmative defenses, dismissal of a complaint under 12(c) on the basis of an affirmative defense is appropriate. *See Brownmark*, 682 F.3d at 690 n.1.[5]

In deciding a 12(c) motion, "[t]he Court makes its determination based on the pleadings alone, which include the complaint, the answer, and any written instruments attached as exhibits." *Hernandez ex rel. Gonzalez v. Tapia*, No. 10-CV-4124, 2010 WL 5232942, at *3 (N.D. Ill. Dec. 15, 2010). Even with motions filed under Rule 12(b)(6), the Court may consider documents attached to the motion "if they are referred to in the complaint, central to the plaintiff's claim, and concededly authentic." *Krepps v. NIIT (USA), Inc.*, No. 11 C 8787, 2012 WL 1532227, at *3 (N.D. Ill. May 1, 2013); *see also Ritz v. Lake Cnty.*, No. 08 C 5026, 2010 WL 2025392, at *2 (N.D. Ill. May 21, 2010) ("[D]ocuments attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint *and* are central to his claim.") quoting *Wright v. Assoc. Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994); *accord IFC Credit Corp. v. Re-Box Packaging, Inc.*, No. 01 C 9269, 2004 WL 1336258, at *2 (N.D. Ill. June 15, 2004).[6] This is the rule so that plaintiffs cannot "evade dismissal under Rule 12(b)(6) simply by failing to attach to [her] complaint a document that prove[s] her claim had no

---

[5]     *See* discussion of the elements of a TCPA claim, *infra*, at section IV.A., p.6. *See also Meyer v. Portfolio Recovery Assoc., LLC,* 707 F.3d 1036, 1043 (9th Cir. 2012) *cert. denied*, 133 S.Ct. 2361 (U.S. 2013); *Jamison v. First Credit Services, Inc.*, No. 12 C 4415, 2013 WL 3872171, at **5-6 (N.D. Ill. July 29, 2013) (discussing *Meyer*).

[6]     A copy of each unpublished decision cited herein is attached as Group Ex. A to the Declaration of David S. Almeida, sworn to on August 1, 2014 ("Almeida Decl."). (*See* Ex. 2.)

merit." *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002); *see also Brownmark*, 682 F.3d at

690.

## IV.    THIS TCPA LAWSUIT SHOULD BE DISMISSED

### A.    Background on the TCPA

The portion of the TCPA at issue in this case provides:

> It shall be unlawful for any person within the United States, or any person
> outside the United States if the recipient is within the United States (A) to
> make any call (other than a call made for emergency purposes or *made
> with the prior express consent of the called party*) using any automatic
> telephone dialing system or an artificial or prerecorded voice . . . (iii) to
> any telephone number assigned to a . . . cellular telephone service . . . .

47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added).  This statute has been interpreted in this District

as follows:

> To state a cause of action under the TCPA, a plaintiff must allege that:
> (1) a call was made; (2) the caller used an ATDS or artificial or
> prerecorded voice; (3) the telephone number called was assigned to a
> cellular telephone service; and (4) the caller did not have prior express
> consent of the recipient.

*Hanley*, 934 F. Supp. 2d at 982; *see also* 47 U.S.C. §227(b)(1)(A)(iii); 47 C.F.R. §64.1200(a)(1).

In 2008, the Federal Communications Commission ("FCC") determined that the TCPA is

*not* violated if a creditor (or a debt collector acting on behalf of a creditor) makes an auto-dialed

call to a cellular telephone "if the wireless number was provided by the consumer to the creditor,

and that such number was provided during the transaction that resulted in the debt owed."  *In re:*

*Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 F.C.C.R. 559, ¶ 10

(F.C.C. 2008).

Explaining its ruling in more detail, the FCC stated:

> Because we find that autodialed and prerecorded message calls to wireless
> numbers provided by the called party in connection with an existing debt
> are made with the 'prior express consent' of the called party, we clarify
> that such calls are permissible.  We conclude that the provision of a cell

> phone number to a creditor, *e.g.,* as part of a credit application, reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number regarding the debt. In the *1992 TCPA Order,* the Commission determined that 'persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary.'

*Id.*, ¶ 9. In arriving at this conclusion, the FCC looked to the legislative history of the TCPA. The House Report on the portion of the TCPA that became section 227 provides that "[t]he restriction . . . does not apply when the called party has provided the telephone number of such a line to the caller for use in normal business communications." *See* No. 07-232, ¶ 9, citing to House Report, 102-317, 1st Sess., 102nd Cong. (1991) at 17.

### B. Plaintiff Provided "Prior Express Consent" for Real Time to Call Her on Her Mobile Phone.

In this District, the fourth element of a TCPA claim is that "the caller did not have prior express consent of the recipient" to make the call. *See, e.g., Hanley*, 934 F. Supp. 2d at 982. Regardless of which party has the burden of proof on this issue, the fact is that Tannlund consented and therefore her TCPA claim lacks merit and should be dismissed.[7]

Consent is proven by the Modification Agreement signed by Tannlund. Under the statutes and regulations cited above, when a debtor—like Tannlund—provides her mobile phone number to a creditor, she consents to receive auto-dialed calls on her mobile phone. The creditor may then call the debtor at that number using an ATDS or prerecorded message without

---

[7]    The burden of proof issue does not, as a practical matter, make any difference in this Court's analysis of this motion because "[w]hether a particular ground for opposing a claim may be the basis for dismissal for failure to state a claim depends on whether the allegations in the complaint suffice to establish that ground, not on the nature of the ground in the abstract." *Jones v. Bock*, 549 U.S. 199, 215, 127 S.Ct. 910, 921 (2007). Simply stated, a motion should not elevate form over substance.

violating the TCPA.[8]  As such, any and all post-modification calls from Real Time to Plaintiff complied with the TCPA because Tannlund consented to receive Real Time's calls at the 4777-number.[9]

In *Frausto v. IC System, Inc.*, this Court applied the 2008 FCC Order, *supra*, to find that a debtor consented to be contacted on her cellular phone.  There, the plaintiff opened a PayPal account, provided PayPal with his mobile telephone number, and consented to PayPal's user agreement which included the following provision:

> **1.10 Calls to You.**  By providing PayPal a telephone number (including a wireless/cellular telephone), you consent to receiving autodialed and prerecorded message calls from PayPal at that number.

Case No. 10 CV 1363, 2011 WL 3704249 (N.D. Ill. Aug. 22, 2011).  Frausto later became indebted to PayPal.  The defendant, a third-party debt collector retained by PayPal, then placed calls to Frausto's wireless telephone, in an effort to collect the debt.  *Id.* at *1.  In granting summary judgment in favor of the debt collector, this Court determined that Frausto's consent to PayPal's user agreement constituted his "prior express consent" to be contacted for debt collection purposes at the wireless telephone number he had provided—whether by PayPal or by its third-party collection agent.  *See id.*, at *2.

This Court's decision in *Frausto* is not only in accord with the 2008 FCC order (which this Court must follow under the Hobbs Act, 47 U.S.C. § 402), but also with the other federal

---

[8]    And, of course, Real Time could always contact Tannlund in live, person-to-person calls in order to collect on her mortgage debt.  *See, e.g., Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 274 (3rd Cir. 2013).

[9]    Real Time assumes that the mobile number it dialed to reach Tannlund—the 4777 number—is the same number at which she agreed to be contacted in the Modification Agreement.  If this is not the case, then the Complaint should be dismissed since it does not allege the specific mobile telephone number that Real Time allegedly called.  *See Strand v. Corinthian Colleges, Inc.*, No. 1:13-CV-1235, 2014 WL 1515494, at **2-4 (W.D. Mich. April 17, 2014) (dismissing TCPA complaint because it did not allege the particular cellular telephone number to which calls were placed).

courts to have decided this issue. *See, e.g., Sartori v. Susan C. Little & Assocs., P.A.*, No. CIV 12-0515 JB/LFG, 2013 U.S. Dist. Lexis 117109 (D.N.M. June 27, 2013) (plaintiff consented to calls on his mobile phone regarding his loan because he provided a mobile number when he applied for his loan, and later gave an updated mobile number for the creditor to use in calling him) report and recommendation adopted, 2013 WL 4401370 (D.N.M. July 30, 2013) and *aff'd*, No. 13-2162, 2014 WL 3302588 (10th Cir. July 9, 2014); *Chavez v. Advantage Group*, 959 F. Supp. 2d 1279 (D. Colo. 2013) (plaintiff consented to calls to her mobile phone by debt collector for her doctor, where she provided her mobile telephone number to the doctor at the time she requested the services); *Saunders v. NCO Fin. Sys., Inc.*, 910 F. Supp. 2d 464 (E.D.N.Y. 2012) (plaintiff consented to calls on her mobile phone by debt collector for PACER, where he listed that number in his application for PACER access); *Johnson v. Credit Prot. Ass'n, L.P.*, No. 11-80604-CIV, 2012 WL 5875605, **4-5 (S.D. Fla. Nov. 20, 2012) (plaintiff consented to calls on his mobile phone by Comcast's collector when he provided his mobile number to Comcast when setting up his account).

In this case, Tannlund not only provided her mobile number to Real Time when she signed the Modification Agreement on May 23, 2012, she also explicitly authorized Real Time to contact her at that number. (*See* Ex. 1-B, the Modification Agreement, at 4.) Plaintiff's Complaint alleges that the telephone calls giving rise to her TCPA claims occurred between January 1, 2013 and June 30, 2014 (Compl. ¶ 17), after she had authorized Real Time to call her at her mobile number.[10] This case presents substantially the same scenario at issue in *Frausto*, and requires the same result—Tannlund's Complaint must be dismissed.

---

[10]     While her Complaint mentions calls placed to her by Real Time prior to the date she signed the Modification Agreement, it does not appear that these calls are the subject of her TCPA claim. For example, Paragraph 11 of the Complaint alleges that Real Time placed

### C. The Court May Consider the Modification Agreement Between Plaintiff and Real Time in Deciding this Motion.

As noted above,[11] the modification agreement can be considered on this Motion because it is specifically referenced in Tannlund's Complaint: "Plaintiff spent more than a year negotiating with Defendant to modify the terms of the repayment. . . . [¶] . . . The loan modification was finalized in 2012 . . . ." (Compl., ¶¶ 10 & 13.) Tannlund's failure to attach the Modification Agreement to the Complaint is emblematic of artful pleading, justifying the Court's consideration of the actual agreement between Tannlund and Real Time.

The central role of the Modification Agreement is found in a comparison of:

- The Modification Agreement itself: "I hereby authorize Real Time . . . to retain and use . . . cell phone numbers in order to contact me.";[12]

- The fourth element of a TCPA claim: "the caller did not have prior express consent of the recipient.";[13] and

- Tannlund's assertion in paragraph 16 of the Complaint: "At no time did Plaintiff give her consent for Defendant to place such calls to her . . . ."

The Modification Agreement, of course, proves that Tannlund *did* provide her consent for Real Time to call her on her mobile telephone. This fact is properly considered on this motion and is

---

"dozens" of calls to her on her cellular telephone "in an effort to collect on the debt," but this paragraph addresses Real Time's efforts to collect the debt before Tannlund's loan was modified, and does not allege that those calls were made by means of an ATDS, which is an essential element of her claim. In any event, Tannlund's Modification Agreement released Real Time and its employees from liability for any claims "known or unknown," arising from "the collection or negotiations with the borrower by Real Time." Ex. 1 at sub-exhibit B at 4. "Release" is an affirmative defense (Fed.R.Civ.P. 8(c)(1)) and may be raised through a responsive pleading followed by a motion for judgment on the pleadings. *See, e.g., Hernandez*, 2010 WL 5232942 at *3. As such, in the event Tannlund's Complaint was attempting to allege TCPA violations both before and after the modification, any violations *pre*-modification were released and such claims should be dismissed.

[11]    *See* Section III, *supra*.

[12]    Ex. 1 at sub-exhibit B.

[13]    *Hanley*, 934 F. Supp. 2d at 982; *see also* 47 U.S.C. §227(b)(1)(A)(iii); 47 C.F.R. §64.1200(a)(1)).

dispositive of her entire lawsuit. *See Wright*, 29 F.3d at 1248-49 (dismissing a 42 U.S.C. § 1983 claim based upon an agreement mentioned in the complaint, but not attached to it, which disproved the basis for his claim). As in *Wright*, the Modification Agreement is central to and dispositive of Tannlund's claims because it demonstrates beyond any doubt that her claims lacks merit.

## V. CONCLUSION

Tannlund provided her mobile number to and expressly consented to receive calls from Real Time. This is a complete defense to Tannlund's TCPA claims, and requires that her complaint be dismissed with prejudice. Real Time therefore respectfully requests that Plaintiff's Complaint be dismissed further to Federal Rule of Civil Procedure 12(c), and this Court enter judgment in favor of Real Time.

Dated: August 1, 2014

**SHEPPARD MULLIN
RICHTER & HAMPTON LLP**

By: /s/ David S. Almeida
    One of Its Attorneys

David S. Almeida, ARDC #6285557
dalmeida@sheppardmullin.com
David M. Poell, ARDC #6302765
dpoell@sheppardmullin.com
**SHEPPARD MULLIN
RICHTER & HAMPTON LLP**
70 West Madison Street, 48th Floor
Chicago, Illinois 60602
T: (312) 499-6300
F: (312) 499-6301

and

**SPENCER FANE BRITT & BROWNE LLP**

By: /s/ Bryant T. Lamer
       One of Its Attorneys

Bryant T. Lamer, ARDC #6271286
blamer@spencerfane.com
**SPENCER FANE BRITT & BROWNE LLP**
1000 Walnut Street, Suite 1400
Kansas City, MO 64106-2140
T: (816) 474-8100
F: (816) 474-3216

*Counsel for Real Time Resolutions, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the above and foregoing

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR JUDGMENT ON THE**

**PLEADINGS** was served upon all interested parties using this Court's ECF filing system this

1st  day of August, 2014.

<u>/s/ David S. Almeida</u>